Good morning. May it please the court, my name is Frederick Ulrich. I'm an assistant federal public defender in the Middle District of Pennsylvania and I represent Mr. Vasquez-Algarin. I'd like to reserve two minutes of my time for rebuttal. Addressing centrally the main question, whether law enforcement officers can forcibly enter and search for a fugitive in the home of a third party without a search warrant, but using an arrest warrant issued by the District of Puerto Rico. In terms of the court's initial question, which is what standard applies in this circumstance, we believe the court's answered that standard. That question regarding the standard under Payton v. New York in first United States v. Agnew back in 2005 and then more recently in United States v. King. The standard is probable cause. Payton also uses a standard of reason to believe to enter the apartment, so they have used both standards, which is the one that we should consider. We think it's probable cause. We think the court actually used the correct standard in Agnew and King. You think the reference to reason to believe or reasonable belief was a mistake? I don't think it was a mistake. I think when you look at the Payton decision, it's addressing this issue in the context of whether these guys, these law enforcement officers, need a warrant to go into somebody's house. So they're talking about the probable cause determination associated with an arrest. What about the Veal case? And in Veal, I think the court mentioned that the standard may be up for debate, but our view is that it's fairly settled, at least within this circuit. And I don't think the Supreme Court decision in Payton is to the contrary. If you look at Justice White's dissent, he's certainly talking about the majority opinion in terms of their probable cause requirement, and in fact, in a footnote, says the majority is imposing upon the police a requirement of an extra increment of probable cause in these arrest warrants. And I might add that the arrest warrant in this case, it wasn't introduced into evidence, but I doubt seriously that it contained a reference to the North 13th Street address in Harrisburg, Pennsylvania, having been issued in the District of Puerto Rico. But the issue is not settled. It's pretty apparent from the split among the circuits. We've got the circuits taking all sorts of different views, from being reasonable suspicion to its own standard to probable cause to just being a matter of semantics. And we in Veal, as Judge Roth was noting, we said there that Agnew was describing the application of a probable cause standard in that case, but we made quite clear that we thought the issue was still open and didn't need to be addressed in Veal. So isn't that what we're addressing today? Yes. I mean, there's definitely a divergence among the circuits in the application of this standard, but a probable cause standard seems to make a lot more sense when you're talking about going into somebody's house. I'm not aware of any authority outside of this context that would say reasonable suspicion is enough to walk into somebody's house and conduct a search. Well, look at the additional element. Do you have to believe that the person is in the house at the time, that the person you're trying to arrest is actually at that location? Is that part of the test? Yes. I believe the test is actually two things. First of all, what kind of information do the officers have to suggest that this guy is at this particular address? And then secondarily, is he there? Well, you had pretty good information in this case from people on the street, informants as well as a police detective. Actually, our position is this is pretty thin information. If you look at almost every single case, even the ones that are using some sort of reasonable suspicion standard, nobody has information as general and as vague as this case. Now, if you take a look at, for instance, United States v. Graham in the First Circuit or Glover in the Eighth Circuit or Pruitt in the Sixth Circuit, which actually did discuss a different standard, none of them are talking about some sort of information from unnamed informants that somebody may be staying at an address on North 13th Street in Harrisburg. They're talking about information in the context of a warrant. There's something very appealing about your argument because when it comes to entering somebody's home or house or apartment, you would expect that the standard would be a little higher. So it wouldn't be reasonable to believe it would be probable cause, especially when they're going to break the door down. But it seems like in this case, they had all the indications that there was somebody there and it was the person that they were looking for, especially with regard to the phone that was inside, etc. What would be the name of a movie or a play? The door would stop barking. And the phone would stop ringing. Well, if you look at the information, so the Deputy Marshal Duncan says that he has information from informants, he doesn't say how many, that this guy, Rivera, may be staying at this North 13th Street address in Harrisburg. And then he spoke to a detective, again unnamed, who says the same thing. Now, that's a lot different than what happens in all these other cases. On all these other cases, where there's an informant, the information is particularized, it describes in detail, hey, the guy's there, he's got a gun, and more important, it describes it in a time frame. He's going to be there for 24 hours in one case. In another case, he's going to be there for two days. In another case, he's in a rear apartment. And then the police don't just simply act on that information, they cooperate it because it's not reliable. It's coming from an informant, an unnamed one at best. Are you suggesting, at least for the second prong, that the police actually need to do surveillance and corroborate that the target of the arrest is actually physically in the home, and they know where in the home he is? I think that, well, that's obviously the court's third question in the questions we received. But yes, sometimes I think they do. I think that if it's a probable cause standard, then it's somewhat flexible, obviously. If you get information from the probation officer, hey, this guy hasn't shown up, he's in violation of parole or probation, I've had contact with him at this address, that's where he lives, and you go there and you see somebody or hear somebody, I think you can go right in. If it's probable cause to get the warrant, and it's probable cause to enter or break down a breacher door to arrest a suspect, is it your view that reasonable belief doesn't exist anymore? I don't know that it doesn't exist. I think the court's use of the term reasonably believes or reasonable grounds or probable cause all mean the same thing. So we should distinguish between the two? Not in this context. I think if the police have reliable information, and what makes it reliable? Some degree of corroboration from surveillance, maybe, some degree of corroboration from the records in the case, or some degree of corroboration from simply interviewing or knowing who these people are. If a landlord tells you the guy's living there, I think you can go in. If we take the position that reasonable belief that this is the resident's reasonable belief that the target of the arrest is in the home is enough to give rise to a probable cause standard, which is what I think you were just asserting, then why, having formed a reasonable belief that this is, in fact, the residence of the LSD, why isn't it enough for the police to then go knock on the door and hear that someone is inside? Doesn't it give rise to a reasonable belief that if this is, in fact, known to be the residence of the target, and there's movement inside, someone is inside that residence, there's reason to believe that that is the person to be arrested? Well, that's what I was trying, perhaps not particularly well to articulate before. I think it depends on the strength of the initial probable cause determination. If your reasonable belief that this is a person's residence is based upon an anonymous tip from one or two informants and an anonymous information from some unknown police detective, and there's no detail, I think you need a little bit more when you get to the residence to determine if the person you're looking for is there. Mr. Rivera certainly didn't rent this property. Mr. Rivera certainly wasn't the owner of the property, and from what we can tell based on Deputy Marshal Duncan's testimony, when they ran that AccuRent, Infotech, and Metropolitan Police checks on all those databases, they didn't come up with something that said, he's there. So they're going there based upon this very vague information that he's staying at this place on 142 North 13th Street and nothing else. We don't know who else. The property was apparently rented by Mr. Vasquez Delgaren. So that brings me to the next point is, why wouldn't, in the context of a third party's interest, there be a probable cause standard? Because certainly the information necessary to get an arrest warrant doesn't protect third parties and their property interests and Fourth Amendment rights. You know, I'm thinking, the problem is, what do you tell police officers on the street? You have to have probable cause or reasonable belief. How do you tell them what the difference is? Well, I think they know how to make a probable cause determination. They make them all the time. In fact, it's kind of an interesting coincidence. If you look at Agnew, the law enforcement officer in Agnew was then Sheriff Duncan. He's now Marshal Duncan in this case. He seemed to figure it out pretty good. I mean, he didn't seem to have any trouble. When I was doing my research, you tell them about the reasonable suspicion. It's the same Duncan? It's the same Duncan. The same person. And when you look at his testimony on page 29 of the appendix, he knows that he doesn't have enough information to go in there right away. He's hoping he's going to get consent or at least make contact with a third party before he goes breaking down the door. So he didn't seem to have any problem with this. And when I was doing research, I certainly didn't stumble across a whole bunch of cases. You didn't answer the question. What if you're in the police academy and you're trying to teach the difference between reasonable belief and probable cause? I think you would just tell them it's the same standard. I think you would tell them that probable cause... Is there a case that says it's the same standard? Well, this Court said probable cause in Agnew and it said it again in King. Well, it certainly would make life a lot easier. No, but I mean, reasonable belief and probable cause, that it's the same. You were saying you thought it was the same thing. I think it is. I think if... Is there a case that says it's the same thing? I don't. I think... No, I don't. I mean, apart from the dissenting opinion in Payton, where the dissenters certainly treat it as the same thing and specifically articulate it as such, I don't think there's a case that says it's the same thing. You would distinguish between those two and reasonable suspicion. I'm sorry? Reasonable suspicion. Reasonable suspicion in the nature of a Terry stop I don't think would be adequate to go into a third party's home and conduct a search. In fact, in our view, in this case, it's a lot closer to Stiegel than it is to Payton because we have a third party's premises that's being invaded by law enforcement officers. And we think... Well, why shouldn't we think of this as a sort of false distinction in that the Supreme Court, when it comes to probable cause or search or even for arrest, has repeatedly used the term reasonable belief, probable belief that crime is afoot or reasonable grounds for believing that there's guilt, and then articulated in different ways that the quantity and specificity of evidence that's required to fulfill that reasonable belief giving rise to a legal standard of probable cause? It doesn't seem that the legal standard for probable cause is that difficult to meet. I mean, it's fairly flexible. It's totality based. Police apply it on a regular basis, making arrests, giving warrants, and making other determinations associated with their duties. So it's not as if we're imposing some insurmountable standard. And in fact, I would venture to say, at least in this circuit, Marshall Duncan certainly was looking at it as a probable cause standard as opposed to a reasonable belief. I'm interested in your suggestion earlier, because you seem to say that we should think of this as perhaps a sliding scale, that this is a totality of the circumstances encompassing both issues, that is, the residence and the presence in the residence, rather than as two prongs, which is the way that the courts of appeals have generally approached it. Well, I think like in most things dealing with these kinds of standards, the totality sometimes overlaps. So if you have information that a parole violator lives in an apartment in Harrisburg, and you've been there before, and he lives by himself, and you go there and you hear noise, I think you can just walk right in. But if you have information that this guy might be staying with a fugitive, frequently don't stay with at their legal address. They're on the run. So if they're going to some different place, and they're staying there, and you know they're living with somebody else, you've got to take into consideration those people's interests as well. And I think you need a little bit more. What if the officers approach the door and knock on the door, and it's not only that they hear someone inside, but they hear actions taken, evasive kinds of actions, like shutting off the phone or quieting the dog in response to the police knocking and identifying themselves. Doesn't that give rise to reasonable suspicion? I think it depends on the strength of the initial information. I don't think that a phone not ringing long enough or a dog not barking long enough is necessarily the same thing as actually seeing somebody in the house. And I would point out that the district court did say that they saw movement in the house. That's not a part of the record in this case. They heard movement. I think seeing movement might be a different thing. But in this case, we just don't think it's sufficient. Thank you very much. Thank you. Mr. Bloom. Good morning. May it please the court. My name is Darrell Bloom. I represent the United States in this particular matter. I'd like to make one clarification. Initially, there was a court that said that probable cause and reasonable believe. One court said that they were equal, and that was the Ninth Circuit in Graham. But every other circuit, the First, the Second, the Third, the Fifth, the Sixth, the Eighth, the Tenth, the Eleventh, and the D.C. Circuit Courts of Appeals all suggest that it's a different standard. What do you think about that? I think it is a different standard. And I think it's a different standard for a number of reasons. I think the Supreme Court, initially in Payton, and Payton is the one that really provided the inception of what is reasonable belief or reason to believe. And Payton, very clearly, they distinguished. And they said probable cause for the arrest warrant, but reason to believe. And then they provide the other two factors. So what do you tell the police officers that have to grapple with these things? What's the distinction? Is there a quantum distinction? Well, that's interesting, Your Honor. It's very difficult, and it's very imprecise. The Supreme Court has talked about how imprecise probable cause itself is. We know that probable cause doesn't mean a preponderance of the evidence. It doesn't even mean it's probable. Probable, in normal terms, means it's more likely than not. But the Supreme Court, in many cases, has said that probable cause does not mean more likely than not. It's very imprecise and fluid. But I think what we have here is reason to believe. I think it's more akin to reasonable suspicion. In fact, the Supreme Court and Terry talked about what reasonable suspicion is. And before actually coming up with this reasonable suspicion term, they said very specifically that it's reasonable grounds to believe. I think that's very similar to this reasonable belief. It's a lower threshold. And I think that the court, when they acted in Payton, very clearly, they didn't expressly use the term probable cause. They could have done so. They could have defined it and used the same terms. What's the danger of Mr. Ulrich's suggestion that they be treated the same? I don't know necessarily that there's a danger, per se. But I think that what we have is we have a compelling interest of the government and of the public in the apprehension of fugitives, individuals that are wanted. And in this particular case, it was an individual that was wanted for murder. Very dangerous. We have a countervailing interest in the sanctity of the home. And the Supreme Court has, including in Stegall, very close to the flip side of Payton, has given the highest protections to the Fourth Amendment protections to the home. So how could it possibly be that when we think about the default, that is that these are protected third-party homes until the police know otherwise, where you need not only probable cause, even with probable cause and an arrest warrant, you couldn't get in the home of the third party with a guest, right, under Stegall. I would agree in that case. I think Stegall is completely inapplicable in this particular case. But that sets for us the baseline, doesn't it? Because if you need even more than probable cause to get into a home where someone is sought as a fugitive as a guest, and we're talking about lowering the standard, that police can get in the door with an arrest warrant as a result of Payton, then the residence, the ownership of the home, in a sense, becomes a proxy for what level of protection a house is going to get. How, then, could we use anything less than probable cause to identify ownership when it's serving as a proxy for the standard for Fourth Amendment protection of what are, at least in the default, third-party protected homes? Your Honor, that's a good point. And the Fourth Amendment certainly is one of the greatest protections that we have. And the difference, and I would say, first off, I would say that Stegall is not applicable here. But nonetheless, we have the probable cause. We're not simply going in a house based upon reasonable belief. And I think that Payton really provided a three-step process. The first step is, is there probable cause for an arrest warrant? Do you have a valid arrest warrant? The answer is yes. And then you look to the next step. And the next step is, is there reason to believe that the individual resides there and is present at the time? And I think that's when the threshold gets broken, because you already have probable cause. And the Supreme Court has already addressed that. The Supreme Court said it's logical to require someone who has a valid arrest warrant that's been issued to open their door to be arrested. And I think that's exactly it. It's a countervailing interest. And I think the Court's absolutely right. We certainly want to protect our homes. One of the greatest protections we have is the Fourth Amendment. But nonetheless, I think we're satisfied, because we're not dropping the standard completely. What we're doing is we're saying probable cause for the arrest warrant. And once you have that arrest warrant, the person should be required to open their home based upon a reasonable belief with the other two factors. And I think that the Supreme Court in Payton was clear that this is a very distinct. And the other reason I think so is because you must assume that they made a conscious effort. They used it in the same sentence. They used probable cause. And they used this reasonable belief standard in the very same sentence. All the other courts other than the Ninth Circuit have held that. In fact, this court has held that they not definitively made a determination. And this court also held that Agnew, not this panel, of course, but this court has held that Agnew was incorrect in Porter. And there's a footnote, the third footnote, Porter is non-precedential. It is a non-precedential decision. But I say that because both Veal and Williams, both of Third Circuit, Williams is unpublished as well, both indicated that they didn't need to make the determination of whether or not it's reasonable belief or whether or not it's probable cause. Because in those cases, they had probable cause. In this particular case as well, I would submit to the court that there was probable cause. I'm arguing first for the standard to be reasonable belief or reason to believe. But nonetheless, I think probable cause was here as indicated by the district court judge. How would we define the reasonable belief? Something less than probable cause? That just sounds so unsatisfying. It's very unsatisfying, Your Honor. And I can tell you that after doing quite a bit of research on what probable cause is, something that every law student should know, every judge should know, every Supreme Court justice should know. And nonetheless, the Supreme Court itself in a number of decisions says, it's an in-price, incapable of precise definition or quantification into percentages. They don't really define what exactly it is. Well, that's true. But in many other cases, like Maryland versus Bowie, for example, in Reniger versus the Supreme Court has, in describing what gives rise to the illegal standard of probable cause, has grounded that in a sort of factual determination, something that a magistrate or a district court can evaluate, that is, whether there was a reasonable belief on the part of the officers engaged in the search or arrest, as the case may be. Why shouldn't we think about it in those terms, that reasonable belief is part and parcel of probable cause? It's simply the way to describe how that legal standard is met. That's a good question. And I guess to address the first part, you absolutely have to look at the context. And in fact, in Payton Court, the courts and all the courts that have addressed this, they say that you look at the law enforcement officer's experience, you look at the totality of the circumstances, you look at all those factors. In terms of the definition and getting in part both your questions with Judge Fuentes' question as well, reasonable suspicion has kind of been defined as articulable facts. You can draw a rational inference in light of experience. They talk about that it's a sufficient probability, that there's a fair probability when you have probable cause. So in terms of addressing what the standard is and why it's different, I think it's a lesser standard. And I think it's a lesser standard because you already have the protection from the arrest warrant, and now you have an officer who on the moment, at the very specific time, has to make a determination. And the courts have been loath to get kind of in the officer's mind and second guess what they should do, the things that they should do to verify someone is there. Aren't those really probable cause for different things? The arrest warrant is probable cause to arrest a particular subject. We're talking about what standard is required, probable cause or something less, to make the assumption that because this is the arrestee's home, that the police can burst into that home, that the warrant gives them entry into the home. Those seem like different inquiries because they implicate potentially different rights. In one case, the subject of the arrest warrant. In the other case, what may well be an innocent homeowner. Well, I think there's a number of ways. There's certainly probable cause for, and you have to look at it as a context, as it relates to an arrest warrant. There's probable cause as you look to a search warrant. There's reasonable suspicion for a Terry stop and frisk. There's reasonable belief or reason to believe, as we have here, for entry into a home. And again, it's a Payton home. It's not a Stiegold home where it's the home of a third party. Even though the Deputy United States Marshal was incorrect, Payton would be dead if he had to be 100% correct. And that's just not what it is. Even under any standard, whether it be probable cause or whether it be reasonable belief. And here, it's logical to assume that the information, and the information was that Deputy United States Marshal Duncan had, that he was a resident there. And it was from reliable information. That's in the record. Can you address that? Because doesn't the government have here an even more fundamental problem in that where you haven't identified who the informants are, anything about their history, their credibility, their reliability, the basis of the information of the officer who made the referral. Would that even give rise to reasonable suspicion for even a Terry stop? I think it absolutely would. I think there's a number of factors here. We have information. The Deputy's talk spoke about that the informants were reliable informants. And he had a detective in addition to that, that both spoke about this individual having his residence there. The Supreme Court in Draper, in fact, in 1959, that spoke about that you can rely on informants. You have to. At what point do we take it to its logical terminus at a hearing as to getting into all the evidence? Why they're credible, the other information? There has to be determination. And it's the determination you got to look at. You can't second guess. You're looking at the determination of the law enforcement officer at the time that he's making entry into the home. And at that time, he believed that the information that he had was from a reliable confidential informant and a reliable police detective for the city of Harrisburg. How is it even apparent from the transcript that those were two separate sources as opposed to his belief that the referring officer obtained that information from secondary sources? I don't know that it's clearly apparent. I think you have to take the context in which he said it. He said, I had information from a police detective and confidential informants, and more than one parole. He didn't say, I have information from a police detective who obtained his information from confidential informants. So I think that there's a difference there, the way he's saying it. But in swearing out a search warrant or a criminal complaint, we would typically expect there to be a statement as to the particular informant having on past occasions provided reliable information, corroborated in different ways. We don't have any of that kind of specificity here. The number of informants, whether a testing officer even had direct information or was getting it simply through the referring officer, how could that rise to even a reasonable suspicion level? Well, the reason is because we don't have a search warrant. A search warrant is not necessary, and it's not necessary because the Supreme Court said it's not necessary. So we didn't have any of the writings that would articulate those things. Again, the court has to look back and go in the minds of the law enforcement officer, the totality of the circumstances and what he did at the time based upon his experience. We have Deputy United States Marshal, after 19 years experience at this time, who indicated that when someone doesn't answer the door, that most likely that individual is in the residence. But somebody's in the residence. It's not necessarily the man they had the arrest warrant for. That's correct, Your Honor. And do you have to, if you have reasonable grounds to think that this is the residence of your suspect, do you then have to have more than just hearing someone in the house grounds for thinking that the suspect is actually in the house? I think that's one factor, but it's a totality of the circumstances. It's certainly logical to believe that a person who is a wanted fugitive, and this is their address, it's certainly logical to believe that they're going to be in the residence. So that's one part of it. Why is it logical to believe? It's logical to believe that they may have gone to Florida to get away from you. Certainly a possibility, Your Honor. But it's logical that they're going to be in their residence where they're staying. That's based upon the information. But we have not only that information. We have the phone being silenced. We have the dog being hushed. We have the movement inside. And in Deputy United States Marshal's opinion, and he indicated very clearly that on many occasions, that when someone doesn't come to answer the door, it's because the individual is a target. And that's at page 36 of the appendix. Let me refer you to the opinion in this case, because this seems to support at least Mr. Ulrich's position that these two standards really are interchangeable and in a sense mean the same. This is the district court opinion. She goes back and forth using the, I don't know if you had a chance to read it, standards where she says, Marshal Duncan had an arrest warrant for Rivera, that was the target of the warrant, and a reasonable belief that he resided at 142 North 13th Street. She then refers to reasonable belief again on the same page. She goes on to say, where officers reasonably, but mistakenly, believe Rivera resided there. She then goes on to say they have a right to answer. She then uses the phrase reasonable grounds for believing, and then says where police lack probable cause to believe, the fugitive is an actual resident. She's dropping now the reasonable belief and using probable cause. And that occurs several times in the opinion as you say you read it. Doesn't that suggest that judges and police officers pretty much thinking the same thing when we're talking about reason to believe in probable cause? I would disagree respectfully. I think the problem is it's very imprecise. And at least I would say probably at least 700 circuits. How do you make it precise? I don't think the courts want to make it precise to be honest with you, Your Honor. Purposely want to leave it vague? I think they want to leave it vague because it depends on the content. It depends on all the factors and the facts in this particular case. At least I would say seven, eight different courts of appeals have addressed this and all of which have said that it's a lesser standard. It's more like the reasonable suspicion standard. Well, a lot of them look at the two standards and say we're not even going to decide what the difference is because under either side, under either standard, the search or the intrusion is lawful. And that's what the government's position will be in this particular case, Your Honor. Can you address, I'm sorry, one more question for you. Yes, Your Honor. Mr. Ulrich made the point that in the testimony at the hearing, the Deputy Marshal Duncan spoke about his reasons for knocking and yelling at the door and that people often refuse to come to the door. But at trial, in his trial testimony, he said the address was not the address of record for Mr. Rivera so he wanted to knock and attempt to gain contact with someone inside and gain their consent to search the address. Can't we take account of the full record in making a determination about whether or whatever the relevant standard was supposed to be was met? And doesn't that suggest that in terms of a reasonable belief that this was the arrestee's home, that that was not, in fact, the way that the officer was thinking about the situation? Well, I don't think necessarily that the two are incongruent. And I think that the court looks at the record of the time based upon the judge's decision on the suppression hearing. So I don't think you go into outside things. You have to look at the record, what we have for the suppression hearing at that time. And I think that, again, I don't think that those two are incongruent because if you look at the testimony of the deputy, at times he's talking about he's staying there, but then he later talks about that he's residing there. So it's semantics and the terms that necessarily that I would prefer that are used are not necessarily always used. And that's why the court makes the ultimate determinations. Mr. Boone, thank you very much. Thank you, Your Honor. Mr. Ulrich. Just two quick points. One, to follow up on Judge Fuentes' concerns, what's the big deal about having a probable cause standard? I don't think it really is a big deal. Back in 1980, 81, when Stiegel and Payton were decided, it was a bit of a rigmarole for a police officer to have to go get a search warrant, go back to the precinct house, type it up, take it to a judge. If you look at the testimony of Detective Morris, these guys simply walked out to their cruiser, grabbed a laptop or notebook, take the thing up, send it in electronically to the nearest magistrate and had a warrant in fairly short order. So it's not a big deal to even impose a warrant requirement in this circumstance. And certainly a probable cause standard is something that the police officers were already familiar with. And in terms of the reliability of the information in this case, I think you need to look no further than what happened after they searched the house. Not only did they not find Mr. Rivera, they didn't find anything to suggest that Mr. Rivera had ever been there. So this is a little bit different than most of these other cases where they at least find the individual they're looking for or find stuff that's incriminating. Yeah, but hindsight is not what we're looking for. I know, but it's always helpful. And finally, it's true. One other point that was raised by the court is that the government says that the Supreme Court said, well, you don't need a search warrant. I don't know that they've actually addressed this particular fact paradigm. It's certainly not on the law. Well, that's a problem, though, when you say a search warrant, because if you're looking, supposing the person they were looking for really was there and then you're saying to the police officer, well, now you got to go back and get a search warrant. That person is out the window. This happens very often. Well, it does happen, but I'm not so sure it happens that way anymore. I mean, what's the big deal? This is a row home in Harrisburg, so they put a couple of officers near the only points of ingress and egress, and they spend 20, 30 minutes electronically getting a search warrant. I don't really think that's a big deal, but even putting that aside, even if you were going to say that you don't need one, they should at least need probable cause before they go into somebody else's house. I don't disagree with that. Thank you both for your arguments. We'll take the case under advising.